UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TINA M. COLLIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cv-00078-SNLJ |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Tina M. Collier's applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Collier now seeks judicial review. The Commissioner opposes the motion. The issues being fully briefed, and for the reasons set forth, this Court will **AFFIRM** the Commissioner's decision.

**I.     Procedural History**

Collier's application was denied at the initial determination level. She then appeared before an Administrative Law Judge ("ALJ"). The ALJ found Collier is not disabled because her symptoms were not supported by the medical evidence available. Collier then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration, which was denied. Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Collier now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

1

## II.     Disability Determination—The Five-Step Framework

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 404.1520(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d).

2

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i). An RFC is "defined as what the claimant can still do despite his or her physical or mental limitations." *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017); *see also* 20 C.F.R. § 404.1545(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R.

3

§ 404.1545(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

## III. The ALJ's Decision

At Step One, the ALJ found Collier met the insured status requirements through June 30, 2021, and had not engaged in substantial gainful activity since March 17, 2016. (Tr. 12). At Step Two, the ALJ found Collier suffers from five medically determinable impairments: (1) mild lumbar facet arthropathy; (2) major depressive disorder; (3) generalized anxiety disorder; (4) panic disorder; and (5) agoraphobia. (Tr. 12). At Step Three, the ALJ concluded Collier does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 13-14).

4

Next, in beginning the analysis of Step Four, the ALJ determined Collier's RFC.[1]

The ALJ found that

> [t]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing ladders, ropes, or scaffolds; occasional climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; limited to perform simple, routine tasks but no fast-pace work with strict production quotas such as assembly line work; limited to work that requires only occasional changes in the work setting, occasional interaction with co-workers. And, although there is no prohibition against incidental contact, the claimant cannot perform work that requires interaction with the public.

(Tr. 15). As part of this determination, the ALJ found Collier's allegations about her physical and mental symptoms' intensity, persistence, and limiting effects were not consistent with the medical records when considered as a whole. (Tr. 15). The ALJ noted Collier alleged disability "due to depression and anxiety despite formal mental health treatment, prescribed psychotropic medication, and assistance of a case worker." (Tr. 15). The record "demonstrate[d] a history of treatment for diagnosed major depression and generalized anxiety disorder," yet medication made her "feel[] better." (Tr. 16-17). She even felt "better after [her] husband got his disability." (Tr. 17). In addition to mental health concerns, Collier alleged "back pain" limited "her ability to lift more than 10 to 15 pounds, stand 15 minutes, walk half a block, and sit 20 to 30 minutes." (Tr. 16). Yet, "physical examination findings [] failed to corroborate the claimant's subjective allegations." (Tr. 17). Generally, "clinician found no evidence of abnormal gait or

---

[1] Determining claimant's RFC is "essential to properly completing steps four and five." *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). However, the RFC is determined at step four—a point in which the burden of proof rests with claimant. *See Scott v. Berryhill*, 855 F.3d 853, 855 (8th Cir. 2017); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

5

inability to ambulate independently," and there was "no objective evidence of muscle atrophy, spasm, [] persistent weakness[,] neurological deficits[,] or chronic inflammatory signs." (Tr. 17). Ultimately, taking the record as a whole, the ALJ was unconvinced that Collier suffered debilitating impairments given "conservative" treatment, "daily activities that are inconsistent with the severity of symptoms [alleged]," and "minimally abnormal diagnostic and physical examination findings." (Tr. 18).

Having made an RFC determination, the ALJ continued on through Step Four to determine whether Collier could perform her past relevant work in light of her designated RFC. The ALJ determined Collier is unable to perform any past relevant work. (Tr. 20).

At Step Five, the ALJ analyzed whether Collier can successfully adjust to other work. The ALJ noted that if Collier could perform all or substantially all of the exertional demands at a given level under the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2, then the Grids would direct a conclusion of whether Collier was "disabled" or "not disabled." The ALJ acknowledged, however, that additional limitations impede Collier's ability to perform work at all or substantially all of the assigned level.  Thus, the ALJ relied on vocational expert (VE) testimony to determine the extent to which these limitations erode Collier's occupational base to perform sedentary work. The VE testified Collier could perform work as a small product assembler, packer/inspector, or housekeeper even after considering all of the limitations in Collier's RFC. (Tr. 21).  The ALJ then found these jobs exist in significant numbers in the national economy and concluded Collier is not disabled. (Tr. 21).

6

**IV.     Standard of Review**

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

**V.     Discussion**

Collier makes only one challenge to the ALJ's decision. She says the ALJ erred in giving partial—not controlling—weight to her treating psychiatrist, Dr. Bhaskar Gowda. The ALJ gave weight to Gowda's opinion that Collier suffered "moderate mental limitations" because it was "consistent with treating sources' mental health treatment records[,] supported by the mental status examination findings[,] and [was] corroborated by the assessment of the state agency psychologist, Dr. Smith." (Tr. 19). However, in Collier's own words, the ALJ disregarded and gave "no discussion whatsoever [to] Dr.

7

Gowda's opinion [that] included the doctor's assessment that [Collier] would miss two or more days of work per month due to psychologically-based symptoms." Collier accuses the ALJ of error on this point.

A treating physician's opinion is given "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). However, when "the treating physician's opinion is internally inconsistent or conflicts with substantial evidence contained within the medical record as a whole, the ALJ may afford it less weight." *Pemberton v. Saul*, 953 F.3d 514 (8th Cir. 2020). When a treating physician's opinions are not given controlling weight, the ALJ must give "good reasons" for the weight ultimately assigned; this requires consideration of various factors like length of treatment history, nature of the treatment relationship, supportability of the opinion, consistency of it, the physician's specialization or non-specialization, and "other factors." 20 C.F.R. §§ 404.1527(c)(2), (c)(2)-(c)(6).

A separate issue is ***how*** a treating physician's opinions are presented. When those opinions come in the form of conclusory, undetailed statements—generally called "medical source statements" (MSS)—the Eighth Circuit has repeatedly concluded the ALJ is right to discount or even disregard them. *See Chesser v. Berryhill*, 858 F.3d 1161, 1165 (8th Cir. 2017); *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012); *Johnson v. Astrue*, 628 F.3d 991, 994 (8th Cir. 2011). This is because an RFC determination is one the ALJ must make, not a physician, and that task requires consideration of "all the relevant evidence," not just one physician's opinions. *Nash v. Commissioner, Soc. Sec.*

8

*Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018); *Johnson v. Astrue*, 628 F.3d at 994. Thus, when a functional limitation is included in an MSS, but is "not reflected in any treatment notes or medical records," the ALJ is right to disregard that limitation as conclusory and unsupported by the total record. *Anderson*, 696 F.3d at 794 (ALJ did not err in disregarding treating physician's report on claimant's functional limitations due to pain where report merely referenced "a lot of joint pain" due, generally, to fibromyalgia).

  Here, Gowda completed a mental health MSS that is both conclusory and unsupported. (Tr. 396-398). The MSS is conclusory in that it is, literally, a series of checkmarks—and little else. At the bottom of the MSS Gowda checkmarks "yes" to a question asking whether Collier would "miss two or more days of work per month due to psychologically-based symptoms." (Tr. 398). The MSS is unsupported in that it does nothing to explain why Collier will suffer sustained absenteeism—no records are cited, and no analysis is made. This does not suffice. *See Chesser*, 858 F.3d at 1165 (criticizing MSS that "contained no explanation" for the impairments described); *Anderson*, 696 F.3d at 794 (criticizing MSS that "cites no medical evidence, and provides little to no elaboration" for the impairments described). The ALJ, faced with an essentially nugatory MSS, was therefore required to turn instead to "treatment notes and medical records to form the basis of [his or her] decision." *Anderson*, 696 F.3d at 793. And that is exactly what transpired, here.

  The ALJ explained that Collier "has fluctuating depression," but "there is nothing in the treatment records that would indicate she is incapable at baseline of sustaining non-fast-paced, simple, routine work with social limitations." (Tr. 18). Rather, Collier's

9

"mental impairments are treated, stable, and generally controlled with [] medication" and, moreover, Collier retains the ability to "function independently" including caring for herself, her grandchildren, preparing meals, doing household chores, handling finances, shopping, and driving. (Tr. 18-19). The fact that Collier can engage in various daily activities with success "tend[s] to show that [she] is capable of completing simple tasks, leaving her home, and interacting with others on at least a superficial level"—exactly what the RFC limited Collier to, here. *Julin*, 826 F.3d at 1087. Further, "[t]hat [Collier's] medication [is] effective in relieving her symptoms further supports the ALJ's finding that [her] complaints of disabling depression [are] not fully credible." *Id*. To be sure, Collier's mental symptoms appear situational, where she reported feeling "better after [her] husband got his disability" and suggests she mainly worries about "finances and relationships." (Tr. 343, 439); *see Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (depression that was "situational in nature" and "improved with a regimen of medication and counseling" was not severe). Taken as a whole, this Court agrees with the ALJ that there is nothing in the record to suggest Collier would be unable to work a simple job or would face sustained periods of absence every month—nothing of the sort manifests in the treatment records. Rather, Collier appears to be someone who suffers fluctuating periods of depression and anxiety that are situationally influenced and, overall, well-controlled by medication and treatment. Indeed, any time Collier faces a period of heightened anxiety or depression, it is invariably linked to a passing situation (financial worries, relationship concerns, accident of a grandchild, lack of sleep, etc.) or because medication has been adjusted or, else, ran out.  (Tr. 319, 323, 343, 363, 367, 371, 383,

10

389, 427, 433, 439, 445, 450, 454, 469, 513). These transient factors, alone, are not a reason to believe, as the MSS in this case does, that Collier is going to face persistent and debilitating absenteeism.

This Court cannot say that the ALJ erred in giving only partial credit to Gowda's opinions—all agree that Collier suffers mild-to-moderate impairments due to struggles with anxiety and depression. But, the record simply does not support a finding that Collier will face substantial absenteeism in a job designed, through the RFC, to limit her to simple work, with limited change in work settings, and only occasional social interaction with others. That sort of job is exactly what she appears to be doing in her personal life, as she cares for herself and her young grandchildren. Gowda's workplace-related limitations lack "supportability," 20 C.F.R. § 404.1527(c)(3), and this Court will not conclude that the ALJ erred in pointing this flaw out as to that portion of Gowda's opinions. No error was committed.

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017). Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED** and plaintiff Tina M. Collier's complaint (ECF #1) is **DISMISSED with prejudice**. A separate judgment accompanies this Order.

So ordered this 8th day of September 2020.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE